UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CORAL LYNN BYRD THOMAS,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. C12-1703-RSL-BAT<br><br>**REPORT AND RECOMMENDATION** |

Coral Lynn Byrd Thomas seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications. She contends the ALJ erred by (1) finding Ms. Thomas did not have the severe impairments of cervical degenerative disc disease, nystagmus, vertigo, and brain lesions, and (2) rejecting the opinion of Ms. Thomas's treating physician that she was limited to less than sedentary work. Dkt. 10 at 2. As discussed below, the Court recommends **REVERSING** the Commissioner and **REMANDING** the case for further administrative proceedings pursuant to sentence four.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Thomas is currently 46 years old, has a high school diploma and certified nursing assistant certificate, and has worked as a nursing assistant, cleaner, and cashier.[1] In May and

---

[1] Tr. 38, 174, 239.

REPORT AND RECOMMENDATION - 1

June 2009, she applied for benefits, alleging disability as of November 1, 2008. Tr. 174-87. Her applications were denied initially and on reconsideration. Tr. 83-89, 92-102. The ALJ conducted a hearing on March 22, 2011, and issued a decision on April 26, 2011, finding Ms. Thomas not disabled. Tr. 11-28. As the Appeals Council denied Ms. Thomas's request for review, the ALJ's decision is the commissioner's final decision. Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Ms. Thomas last worked on November 1, 2008.

**Step two:** Ms. Thomas had the following severe impairment: headaches.

**Step three:** This impairment did not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:** Ms. Thomas could perform sedentary work except for an inability to work heights, climb ropes/scaffolds, or operate dangerous equipment.

**Step four:** Ms. Thomas is unable to perform any past relevant work.

**Step five:** As there are jobs Ms. Thomas can perform, she is not disabled.

Tr. 12-28.

## DISCUSSION

### A.   Step two

Ms. Thomas argues the ALJ erred by failing to find her cervical degenerative disc disease, vertigo and nystagmus, and brain lesions were severe impairments. Dkt. 10 at 5. At step two, a claimant must make a threshold showing that (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R.

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

§ 404.1520(c), 416.920(c).  The step-two inquiry is a "*de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Id.*

*1.     Brain lesions*

The ALJ noted that a May 2009 MRI scan showed that Ms. Thomas had two small lesions in her brain.  Tr. 376.  Neurologist Zhongzeng Li, M.D., reviewed the MRI scan and found that the nature of the larger lesion was unclear, but did not believe it had anything to do with Ms. Thomas's headaches.  Tr. 308.  Treating doctor Lana Bur, M.D., noted that another neurologist, Dr. Sheila Smitherton, believed the lesion did not explain her left ear and facial pain, and her symptoms had not been attributed to any specific pathology.  Tr. 290.  In July 2009, neurologist John Miller, M.D., noted that Ms. Thomas's physical examination was "generally unrevealing" and her most recent MRI scan showed no changes from the May 2009 scan.  Tr. 662.  In August 2009, Jay Rubenstein, M.D., an otolaryngology specialist, reviewed Ms. Thomas's MRI and CT scans and concluded there was nothing on exam or imaging that explained her pain.  Tr. 483.  In June 2010, Dr. Miller again noted a stable physical examination, no changes in her MRI scan from May 2010, and Ms. Thomas had had "extensive and exhaustive workups in the past and there has been no clear etiology found" for her symptoms, although her lesion could be playing a role.  Tr. 664.

The ALJ found the only action by medical professionals has been to keep track of the lesions in a series of MRI studies, and they have not shown any changes.  The ALJ also noted the medical expert, William DeBolt, M.D., testified about the series of normal findings and test results, with the exception of some abnormal balance mechanism.  The ALJ concluded that, as

REPORT AND RECOMMENDATION - 3

the lesions had not been established as the cause of any of Ms. Thomas's symptoms, her headaches were a severe impairment by themselves. Tr. 17.

Ms. Thomas argues the ALJ erred in failing to find her lesions were a severe impairment because the ALJ ignored the fact that treating physician Cynthia Horton, M.D., opined Ms. Thomas's brain lesions were causing her symptoms. Dkt. 10 at 6. Dr. Horton wrote a letter in December 2010 in which she stated that she had just received three additional MRI scans that she had not reviewed before[4] and, upon reviewing them, opined that Ms. Thomas's two brain lesions and cerebellum abnormality[5] "are almost certainly causing all of her symptoms." Tr. 678. Dr. Horton wrote this letter as an addendum to her November 2010 opinion in which she also attributed Ms. Thomas's symptoms, including headaches, intermittent vertigo, and left-sided weakenss, to her brain lesion. Tr. 595-98.

Although the ALJ discusses the November 2010 opinion from Dr. Horton later in the decision, the ALJ fails to mention her December 2010 letter at all. When a treating doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject the treating doctor's opinion only by providing specific and legitimate reasons, supported by substantial evidence in the record, for doing do. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). Here, the ALJ simply ignored Dr. Horton's opinion without providing any reason whatsoever. This was error.

The Commissioner argues that any error at step two was harmless because the ALJ resolved step two in Ms. Thomas's favor and considered any limitations resulting from the

---

[4] From Dr. Horton's treatment note from the same day, it appears that these were two MRI scans from 2009 and the May 2010 scan. Tr. 676.

[5] As the medical expert explained, Ms. Thomas's cerebellum projects into the foramen magnum, the hole in the skull that the spinal cord passes through. When this projection is greater than three millimeters, it is diagnosed as a congenital disorder called Arnold Chiari malformation; when it projects less than that, as with Ms. Thomas, it is called cerebella ectopia. Tr. 66-67.

REPORT AND RECOMMENDATION - 4

rejected impairments in the subsequent analysis. Dkt. 11 at 6. It is true an ALJ's error may be harmless where it is "'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). But the Court cannot say here the ALJ's failure to even comment on a treating doctor's opinion was inconsequential to the outcome of the case. The ALJ discussed only opinions the lesions did not cause any of Ms. Thomas's symptoms. Based on the ALJ's decision alone, a reader would not know that any medical source, let alone a treating physician, had opined the lesions were the cause of Ms. Thomas's symptoms. And although there are reasons why an ALJ may conclude that the other opinions outweigh Dr. Horton's opinion, a treating doctor's opinion is normally entitled to great weight. It is the ALJ's responsibility to give reasons for rejecting a treating doctor's opinion; it would be presumptuous for the Court to weigh a treating doctor's opinion in the first instance. Accordingly, the Court concludes that the ALJ's failure to consider all the evidence related to Ms. Thomas's brain lesions was not harmless error.

   *2.   Vertigo and Nystagmus*

The ALJ found in April 2009 Ms. Thomas did not have any positional vertigo,[6] and while positional nystagmus was noted in September 2009, it appeared her symptoms diminished in severity, with, for example, Ms. Thomas reporting in September 2010 the absence of any vertigo for two to three weeks. The ALJ thus concluded that this impairment was not severe. Tr. 18.

---

[6] To support this assertion, the ALJ cited to a treatment note from March 2009 where the doctor noted "She continues to have left sided ear pain and is *no* experiencing positional vertigo." Tr. 346 (emphasis added). At her next visit, in April 2009, the doctor noted, "She has also had positional vertigo with the ear pain." Tr. 344. It appears that the March note includes a typo, which could be interpreted to indicate either that Ms. Thomas is *not* experiencing vertigo, or that she is *now* experiencing vertigo, but the April note supports a finding that Ms. Thomas was in fact experiencing positional vertigo in April 2009.

REPORT AND RECOMMENDATION - 5

Ms. Thomas argues the ALJ took the evidence out of context and points out that vestibular testing in September 2009 showed nystagmus, and she testified at the hearing that she falls due to left-sided weakness and vertigo happening at the same time, with the last episode happening about a month before the hearing. Dkt. 10 at 6.

The record shows, variously, Ms Thomas's reports of vertigo and tests documenting the presence of nystagmus, and her reports of no vertigo and physical examinations showing the absence of nystagmus. Ms. Thomas essentially offers an alternative interpretation of this conflicting medical evidence relating to vertigo and nystagmus. Where, as here, the record is ambiguous, it is the province of the ALJ, not this Court, to resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Because the ALJ's interpretation of the evidence of vertigo and nystagmus as a severe impairment was rational, this Court must uphold it. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The ALJ did not err in finding vertigo and nystagmus were not, in and of themselves, severe impairments. However, the Court expresses no opinion on the role of vertigo and nystagmus as symptoms caused by Ms. Thomas's brain lesions.

    3.    *Cervical disc disease*

The ALJ found that as early as February 2007, before her alleged onset date, Ms. Thomas demonstrated signs of cervical degeneration, and MRI scans of the cervical spine in 2006, 2008, and 2010 showed only mild and minimal findings with no significant changes. The ALJ thus concluded the mild nature of the cervical findings showed Ms. Thomas's degenerative disc disease was mild. Tr. 17-18. Ms. Thomas argues that "despite Ms. Thomas's mild findings of degenerative disc disease, this impairment still causes more than a slight limitation in Ms. Thomas's ability to work" because "her back pain also causes limitations in her ability to

REPORT AND RECOMMENDATION - 6

1  function and perform work activities including sitting, standing, and walking." Dkt. 10 at 7. But
2  Ms. Thomas points to no evidence and provides no support for this assertion. Even if she had,
3  the ALJ's interpretation of the objective findings is rational, and not a finding this Court should
4  disturb. The ALJ did not err in finding Ms. Thomas's cervical degenerative disc disease was not
5  a severe impairment.

6     **B.**  **Residual functional capacity**

7     Ms. Thomas argues the ALJ erred in assessing her residual functional capacity because
8  he wrongly rejected Dr. Horton's opinion. Dkt. 10 at 7. The ALJ gave no weight to Dr.
9  Horton's November 2010 opinion, finding that it was unaccompanied by objective medical
10 evidence to support its conclusions, and that it referred only to mild grip strength weakness and
11 left-sided weakness as the only objective findings. Tr. 21. An ALJ may properly reject a
12 treating physician's opinion that is not supported by objective evidence. *See Meanel v. Apfel*,
13 172 F.3d 1111, 1113-14 (9th Cir. 1999). However, to merely "say that medical opinions are not
14 supported by sufficient objective findings . . . does not achieve the level of specificity our prior
15 cases have required, even when the objective factors are listed seriatim." *Embrey v. Bowen*, 849
16 F.2d 418, 421-22 (9th Cir. 1988). The ALJ must do more than offer his conclusions; he must
17 also explain why his interpretation, rather than the treating doctor's interpretation, is correct.
18 *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). Here, the ALJ did not explain why his
19 interpretation of the medical evidence was correct and Dr. Horton's was not. Moreover, the ALJ
20 overlooked Dr. Horton's December 2010 addendum to her opinion, which provided further
21 explanation of the objective evidence that supported her opinion. The ALJ did not give
22 sufficiently specific and legitimate reasons to reject Dr. Horton's opinion.
23

## C. Remand for further proceedings

Ms. Thomas requests this case be remanded for an award of benefits because the ALJ wrongly rejected Dr. Horton's opinion and that opinion should be credited as true. Dkt. 12 at 6. The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292). This occurs when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence. *Id*. at 1076-77. Here, the Court concludes that remand for further proceedings is appropriate because, even if Dr. Horton's opinion is credited as true, it still must be weighed against the other medical evidence. A remand for an award of benefits would be as inappropriate as the Court making a determination that Dr. Horton's opinion should be discounted entirely.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings pursuant to sentence four. On remand, the ALJ should reassess whether Ms. Thomas's brain lesions are a severe impairment at step two, including considering the impact of Dr. Horton's opinion on the issue. The ALJ should then proceed with the remaining steps of the disability evaluation process, developing the record as the ALJ deems necessary and appropriate.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **August 15, 2013.** If no

REPORT AND RECOMMENDATION - 8

objections are filed, the matter will be ready for the Court's consideration on **August 16, 2013**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 1st day of August, 2013.

BRIAN A. TSUCHIDA
United States Magistrate Judge